In re Timothy **TORRES**, Debtor.

**SIX PALMS MUSIC CORPORATION,**
a California Corporation,
Plaintiff–Appellee,

v.

**QUALITY RECORDS, INC.,** a California Corporation; **R–Tek Music International, Inc.,** A Manitoba Corporation, Quality Publishing, a California Partnership; and Quality Records, a California partnership, Defendants–Appellants.

No. CV–F–96–6104 OWW.

United States District Court,
E.D. California,
Fresno Division.

Aug. 25, 1997.

Cheryl Hodgson, Law Office of Cheryl Hodgson, Santa Monica, CA, for appellants.

Donald Robert Levitt, Law Offices of Donald Robert Levitt, Fresno, CA, for debtor.

Richard D. Bloom, Law Office of Richard D. Bloom, Los Angeles, CA, for plaintiff.

Rene Lastreto, II, Dowling, Aaron and Keeler, Fresno, CA, for Steven D. Diebert, trustee.

## MEMORANDUM OPINION RE: MOTION FOR RECONSIDERATION OF DECISION AFFIRMING IN PART JUDGMENT OF BANKRUPTCY COURT

WANGER, District Judge.

## I. INTRODUCTION & BACKGROUND

Appellants Quality Records, Inc. ("Quality"), R–Tek Music International, Inc. ("R–Tek"), et al. move for reconsideration of the memorandum opinion filed May 20, 1997. That opinion affirmed in part and reversed in part the judgment of the Bankruptcy Court.

Appellants furnished funds to a songwriter named Timothy Torres so he could produce a record. They also furnished him with funds to assist him with legal difficulties. They did not execute a loan agreement with Torres before lending him money for his legal difficulties.

Torres subsequently declared bankruptcy, but Appellants did not file a claim with the estate because they did not think of themselves as unsecured creditors. They deemed themselves secured creditors because, under the recording contract they had with Torres, they had reserved a right to recoup from Torres' share of royalties any funds they had advanced to Torres for "recording costs."

It was previously determined that the monies furnished to Torres fell into two categories. Some represented an investment in the production of sound recordings (recording costs), and these monies were expected to be recovered, with some profit, from the proceeds (royalties) of the records and under no circumstances from Torres personally. The other monies ("legal costs") represented an accommodation to Torres that was not intended to create revenue-generating property. For repayment of these monies, Appellants could look to Torres personally.

Appellants here merely assert an argument that was previously rejected. They argue that the monies advanced as "legal costs" actually qualify as "recording costs" under the definition of that term in the contract.

The argument must be rejected. Although in a larger sense lawsuits are a cost of doing business, they are not "recording costs" in the sense of being an ordinary and necessary part of the process of producing a sound recording. Appellants' argument however, is not rejected solely as a matter of common sense. Contracts are construed as a whole, and provisions must be read in context. When so considered, it is clear the parties never intended sums paid with respect to legal actions to be viewed as recording costs. At the time the contract was formed, they intended any sums expended in connection with legal actions to be treated under the contractual provisions for indemnity. The fact Appellants may subsequently and in good faith have deemed sums loaned to assist a legal defense to be "secured" recording costs—an assertion that seems a post-hoc argument designed to avoid the fact Torres' unsecured debts were discharged in bankruptcy—is without consequence. The meaning of the contract is determined by the intent of the parties at the time of contracting. Appellants' notion for reconsideration is DENIED.

## II. DISCUSSION

The rules of contract construction are set forth in the California Civil Code. The chief rule requires contracts be interpreted to give effect to the mutual intention of the parties as it existed at the time of contracting. Cal. Civil Code § 1636. The intent is to be ascertained from the language of the contract if it is lear and does not involve? an absurdity. Cal. Civil Code § 1638. When the contract is written, the intent is to be taken from the

writing. Cal.Civil Code § 1639. *The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other. Particular words or clauses must be subordinated to the general intent.* Cal.Civ. Code § 1650. *See generally Newby v. Anderson*, 36 Cal.2d 463, 224 P.2d 673 (1950) (construing royalty agreement). *Words are to be given their ordinary and popular meaning unless used in a technical sense or a special meaning is provided by usage.* Cal.Civ.Code § 1644. Technical words are to be interpreted as understood in the business to which they relate. Cal.Civ.Code § 1645. *"However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract."* Cal.Civ.Code § 1648.

It was previously determined, and no party here challenges, that movant R–Tek had a "recording contract" with Torres that created a right of recoupment against future royalties to the extent of any amounts advanced to Torres to cover "recording costs." R–Tek was obligated to advance funds to Torres for "recording costs." It was to have no right to proceed against Torres personally to recover any "recording cost" advances. Its sole recourse was against royalties paid for the exploitation of the property produced in the recording sessions.

In the "recording agreement" and a separate "co-publishing agreement," Torres agreed to indemnify R–Tek for any liabilities incurred by R–Tek as a result of Torres breaching any of the warranties enumerated in these contracts. R–Tek was not obligated to advance any funds ("legal costs") to Torres to assist Torres with respect to legal actions, and R–Tek retained a right to proceed against Torres in personam to make good Torres' indemnity covenants.

Appellants advanced funds to Torres for legal expenses. Before Torres could repay these loans for legal expenses, he declared bankruptcy. Appellee Six Palms purchased property in *Torres'* bankruptcy estate, specifically Torres' rights to royalties. Appellants, however, asserted they possessed the equivalent of a security interest (a recoupment right) in the Torres royalties to the extent necessary to amortize all of their loans (for both recording costs and legal costs) to Torres. It was determined Appellants did have a recoupment right to recover their recording advances. It was determined by the Bankruptcy Court and this Court that the contract did not create a recoupment right or lien for the legal expenses that had been advanced.

Appellants argue the "legal costs" advanced fall within the definition of "recording costs/advances" in Paragraph 5.0 of the Recording Agreement. They contend that before Torres filed for bankruptcy they consciously "elected" to treat these legal advances as "further advances" under the recording cost provision. They assert they never demanded reimbursement from the debtor personally and never filed a proof of claim in bankruptcy because they had already elected to treat the advances as "recoupable under either the Recording Agreement or Publishing Agreement." They argue the "legal advances" could be charged against the recording contract or the co-publishing agreement because R–Tek (the publisher) and Quality Records (the record company) were sued and the advances were "cross-collateralized."

Paragraph 5.00 of the recording contract is entitled "Recording Costs/Advances." Paragraph 5.01 of the contract obligates R–Tek ("RMI") to pay recording costs as defined in paragraph 5.02. (R. 204) Paragraph 5.02 contains several provisions defining recording costs. Paragraph 5.02(a) defines them to include payments to union musicians etc. whose services "are provided in connection with the recording of the Artist Masters." Paragraph 5.02(b) defines them to include all payments required to be made to a union or guild "in connection with the recording of the Artist Masters." Paragraph 5.02(c) defines them to include rental payments for studio space, equipment, engineering, mixing, etc. Paragraph 5.02(d) defines them to include "per diems" for the Artist or others rendering services directly "in connection with the production of the Artist Masters." Paragraph 5.03(e) defines them to include "any amounts loaned or advanced to Artist or payments made for the benefit of Artist by

RMI during the Term hereof." Paragraph 5.03 provides:

> All Recording Costs shall be deemed a *non-returnable*[1] Advance *recoupable* by RMI against any royalties payable by RMI to Artist hereunder. . . .

*See* R. 204

The items enumerated as "recording costs" are all ordinary and necessary expenses associated with ("in connection with") the production of studio master recordings. Paragraph 5.02(e) was not intended as anything more than a catch-all provision with respect to unenumerated expenses associated with the record production process. The contracts contain separate indemnity provisions relating to costs related to legal actions.

Appellants' argument is circular and produces an absurdity. The contract *requires* R–Tek to *pay "recording costs,"* but according to Appellants "recording costs" include *any advances paid.* In other words, R–Tek must Pay up front anything it pays up front. The argument implies R–Tek would breach its agreement if it failed to make *any* advance demanded by Torres, whether or not Torres wanted money for anything directly connected to the production of Artist Masters. Under Appellants' interpretation, Torres could have demanded any number of nonrecourse, interest free loans for any purpose and require the increasingly large debt to be "recouped" against an uncertain flow of royalties. The argument strains credulity. There would be no reason to speak of "recording costs" if Torres had an unmitigated right to advances.

Advanced or not, the parties did not intend to treat legal costs as recording costs. Costs attributable to infringement by the *product of the recording process* were never intended to be viewed as costs associated with the process of creating that product. The contract as a whole does not support the construction sought, nor does the construction sought do more than produce an absurdity.

**1.** Appellees do not challenge Appellants' assertion that the term "non-returnable" precluded

## III. CONCLUSION

For the foregoing reasons, the motion for reconsideration is DENIED.

Appellant R–Tek from enforcing the provision against Torres personally.